UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TEAJNAUTH P.,** | Civil Action No. 20-12369 (SDW) |
| Petitioner, | |
| v. | OPINION |
| **JOHN TSOUKARIS, et al.,** | |
| Respondents. | |

**WIGENTON**, District Judge:

Presently before the Court are the petition for a writ of habeas corpus (ECF No. 1) and motion seeking a temporary restraining order (ECF No. 6) filed by Petitioner, Teajnauth P. Also before the Court is Petitioner's motion seeking to seal the medical records filed in this matter. (ECF No. 9). Following an order to answer, the Government filed an answer to Petitioner's habeas petition (ECF No. 11), to which Petitioner replied. (ECF No. 12). For the following reasons, Petitioner's habeas petition is denied, Petitioner's motion seeking a temporary restraining order is dismissed without prejudice as moot, and Petitioner's motion to seal his medical records is granted.

**I. BACKGROUND**

Petitioner is a native and citizen of Guyana who initially entered the United States in January 2017 as a nonimmigrant visitor. (Document 7 attached to ECF No. 11 at 3). Petitioner illegally remained in the United States after his visitor visa expired, however. (*Id.*). During his time in this country, Petitioner was arrested several times, resulting in convictions for burglary and criminal trespass in 2018. (Documents 9, 11 attached to ECF No. 11). Following the conclusion of his most recent criminal proceedings, Petitioner was taken into immigration custody in

1

September 2019 pursuant to 8 U.S.C. § 1226(a) and placed into removal proceedings based upon his having overstayed his visitor visa. (Document 7 attached to ECF No. 11). Petitioner has remained detained since that time. On January 28, 2020, an immigration judge ordered Petitioner removed to Guyana and denied Petitioner's applications for relief from removal. (Document 13 attached to ECF No. 11). Although Petitioner initially expressed a desire not to appeal the order and to proceed with his removal (*see* Document 14 attached to ECF No. 11), Petitioner ultimately appealed that order to the Board of Immigration Appeals. That appeal was dismissed by the BIA on June 30, 2020. (Document 15 attached to ECF No. 11). Petitioner is therefore subject to an administratively final order of removal and is currently detained pursuant to 8 U.S.C. § 1231(a).

Upon his arrival at the Essex County Correctional Facility in September 2019, Petitioner was provided with a medical intake screening, during which he raised no significant medical issues. (ECF No. 2 at 4-8). Petitioner was given a chest x-ray shortly thereafter, which indicated no issues or signs of tuberculosis. (*Id.* at 13). Petitioner also received an initial mental health evaluation, which indicated no need for further treatment. (*Id.* at 14). On September 17, 2019, Petitioner reported to the medical department claiming both head pain related to an injury suffered several years earlier and arm pain relating to an unsuccessful arm surgery in 2013. (*Id.* at 15-18). Petitioner was provided pain medication and referred to an orthopedist for further evaluations. (*Id.*). On September 20, he reported further pains and spitting up blood related to congestion. (*Id.* at 20-23). Petitioner received a medical evaluation, after which he was provided a nasal solution and antihistamines for his congestion, and different pain medications for his arm issue. (*Id.* at 20-24). On September 25, Petitioner reported "throwing up blood," which resulted in another medical evaluation and diagnostic testing, as well as Petitioner being provided omeprazole and Tylenol. (*Id.* at 25-33). Because of the results of this initial testing, Petitioner was thereafter

tested for hepatitis and his Tylenol was discontinued. (*Id.* at 35-38). The tests did not clearly indicate hepatitis but did indicate that Petitioner had elevated liver enzymes. (*Id.* at 35-40). Over the course of the following month, medical staff continued to monitor Petitioner's liver issues and provided him with both pain medication and skin cream for a rash Petitioner contracted, and his medications were adjusted as needed. (*Id.* at 40-68).

In late November 2019, Petitioner reported having pain and a burning in his chest, which he believed was related to cholesterol. (*Id.* at 68). Petitioner was given dietary advice and a lipid panel was ordered to test for cholesterol and related issues. (*Id.* at 70). Petitioner also received an EKG, with medical staff ultimately concluding that his pain was muscular in nature. (*Id.* at 70-80). Petitioner was referred to an orthopedist for both his arm and chest pain. (*Id.* at 80-83). The orthopedist found "no clear etiology" related to Petitioner's shoulder and arm pain, but referred Petitioner for a second opinion. (*Id.* at 83). Following Petitioner's lipid panel, he was diagnosed with hypertriglyceridemia and provided medication for that issue. (*Id.* at 86). In early January 2020, Petitioner was taken to the medical department after he was in an altercation with another detainee, at which time Petitioner complained of chest and stomach pain after being punched. He was provided pain medication as well as Benadryl for an unrelated issue. (*Id.* at 91-92). Petitioner thereafter continued to complain of arm pain in January and February 2020, for which he was provided pain medication. (*Id.* at 100-04). Medical staff also continued to monitor Petitioner's lipid panel during this time. (*Id.* at 106-07). When petitioner complained of further pain as well as trembling in early March, he was provided medication, some of which he declined, and underwent thyroid testing. (*Id.* at 108-13). In late March, Petitioner again reported chest pain, and was diagnosed with GERD, for which he was provided medication. (*Id.* at 118-20).

On April 1, Petitioner was given a neurology consult to address his repeated arm pain complaints. (*Id.* at 121). The neurologist concluded that Petitioner's pain was likely related to radial nerve palsy, and recommended reconstructive surgery. (*Id.* at 121). Petitioner was to receive an orthopedic consult on this issue in April 2020, but due to the COVID-19 pandemic, Petitioner's consult was delayed. (*Id.* at 134). Although medical staff continued to monitor Petitioner's arm and lipid issues and adjusted his medication, Petitioner often missed or declined certain pain medications he was provided, either because he disliked their side effects or slept through the time period during which medications were provided by nursing staff. (*Id.* at 144). Following further testing in June 2020, Petitioner was found to be pre-diabetic, and his lipid medications were adjusted to reflect this. (*Id.* at 144). In late June and early July, Petitioner received referrals and evaluations from medical staff and a neurology follow-up for his arm pain issue, but was unable to be seen at the hospital as the hospital's neurology clinics declined to receive new patients for non-emergency issues. (*Id.* at 144-156). Petitioner's conditions continued to be monitored and Petitioner continued to receive medication throughout July and August 2020. (ECF No. 3). Petitioner also tested positive for antibodies indicating that he may have contracted asymptomatically, recovered from, and become immune to COVID-19, on July 20, 2020. (*Id.* at 20). Petitioner received a chest x-ray in late July which indicated no issues of note following further complaints of chest pain. (*Id.* at 13).

In support of his habeas petition, Petitioner has submitted a proposed expert report prepared by Dr. Kate Sugarman. Although Dr. Sugarman has not treated Petitioner, she has reviewed his records. According to Dr. Sugarman, although Petitioner has no active tuberculosis infection, he has previously been exposed to the bacteria which causes such infections, and could later develop TB. (Document 7 attached to ECF No. 1 at 5). Dr. Sugarman also notes that in August 2020,

4

Petitioner was diagnosed with asthma and provided an inhaler. (*Id.* at 4-5). She also notes that Petitioner has a history of smoking, and has liver and pre-diabetic issues, both of which could potentially lead to Petitioner developing issues such as diabetes which are noted COVID-19 risk factors. (*Id.* at 5-7). Based on her review of Petitioner's records, Dr. Sugarman opines that she believes that Petitioner is at "high risk of dangerous complications" were he to contract COVID-19.[1] (*Id.* at 8).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

---

[1] Dr. Sugarman also suggests, based on Petitioner's jail medical records, that he may have untreated health issues, such as his complaints related to spitting up blood or having chest pain. (*Id.* at 7-8). Having reviewed those same records, Dr. Sugarman's suggestion appears to be little more than an uncharitable reading of Petitioner's medical records – Petitioner was seen by medical staff and evaluated in the instances the doctor notes, and Petitioner's records appear to indicate that Petitioner was indeed treated, albeit for the issues medical staff actually found – such as acid reflux, muscle pain, or nasal congestion – rather than the apparently hyperbolic symptoms Petitioner initially reported.

5

## B. Analysis

In his habeas petition, Petitioner argues that his current period of immigration detention has become unconstitutional either because the conditions under which he is currently confined are unduly punitive without a supporting conviction in light of COVID-19, or because the treatment he has received at the facility in which he is detained, when viewed in light of the ongoing COVID-19 situation and Petitioner's pre-existing health issues, amounts to deliberate indifference to his medical needs on the part of the Government. In its recent decision in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), the Third Circuit has reiterated the standards to be applied to both of these claims. As the Court of Appeals explained in *Hope*, in evaluating whether an alien's conditions of confinement amount to undue punishment, "[t]he touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish." *Id.* at 325-27. In the absence of a showing that the detention facility's staff acted with an express intent to punish the petitioner, determining whether conditions amount to unconstitutional punishment requires that the district court "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." *Id.* In reviewing the conditions and actions of detention officials and their relation to the Government's legitimate interest in detaining aliens awaiting removal, reviewing courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id.* Given the Government's strong

interest in detaining aliens subject to removal orders and the deference due to the expertise of detention officials, the Third Circuit in *Hope* rejected the argument that detention during the COVID-19 pandemic would amount to unconstitutional punishment where the facility in which the petitioner is housed had taken concrete steps aimed at mitigating the threat posed to detainees, notwithstanding serious pre-existing health conditions which may render those detainees likely to suffer serious complications should they contract the virus.  *Id.*  327-29.

       Turning to deliberate indifference medical claims, the Third Circuit reaffirmed that "[t]o establish deliberate indifference, [the petitioner] must show the Government knew of *and disregarded* an excessive risk to their health and safety." *Id.* at 329 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000).  The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as "rules of due process are not subject to mechanical application in *unfamiliar territory*."  *Id.* at 329-30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)).  Thus, where the Government has taken concrete steps towards ameliorating the medical effects of COVID-19 on a detention facility, a detainee will fall "well short of establishing that the Government was deliberately indifferent toward [his] medical needs" in light of the virus even though the Government cannot entirely "eliminate all risk" of contracting COVID, notwithstanding any serious pre-existing medical conditions suffered by the petitioner which may exacerbate a COVID-19 infection.  *Id.* at 330-31.

       Given Petitioner's administratively final order of removal, it is clear that the Government has a strong and legitimate interest in detaining him.  As Petitioner has not shown an express intent

to punish him on the part of the staff of the facility in which he is detained, to succeed on his conditions of confinement claim he must show that his conditions are arbitrary, purposeless, or excessive and therefore unreasonable in light of the Government's interest in detaining him. *Hope*, 972 F.3d at 325-29; *see also Stevenson v. Carroll*, 495 F.3d 62, 67-68 (3d Cir. 2007). Having reviewed the considerable steps the facility has taken to alleviate the threat COVID-19 poses to detainees such as Petitioner, which are significantly more protective of detainees than those at issue in *Hope*, this Court finds that Petitioner has failed to make such a showing. The steps which the Essex County facility has taken to alleviate the threat to vulnerable detainees such as Petitioner include operating at less than full capacity, ensuring there are on site or on call doctors and nursing staff at all times, performing intake screenings for all incoming detainees including COVID-19 testing, housing newly arrived detainees in a separate unit, quarantining infected detainees in single occupancy cells and providing treatment including hospitalization where warranted, the cohorting of those who have been exposed to infected individuals but have not shown symptoms of COVID-19 for fourteen days, increased cleaning and sanitization, and the provision of masks and unlimited soap and cleanser access to detainees. (*See* Document 5 attached to ECF No. 11). Taken together, these actions clearly indicate that the facility has made significant strides towards mitigating the threat of COVID-19, and that Petitioner's conditions of confinement are rationally related to the Government's interest in detaining him. Petitioner is therefore not entitled to relief on his conditions of confinement claim. *Hope*, 972 F.3d at 325-29.

Petitioner is likewise not entitled to relief on his medical claim in light of the specific medical treatment he has received while detained and the concrete steps the facility has taken to protect Petitioner and those like him from COVID-19. Petitioner's medical records clearly indicate that jail medical staff responded to and treated the issues brought to their attention, and

provided continual monitoring of Petitioner's more severe issues – such as his lipid issues, liver enzymes, and nerve pain. Although Petitioner's potential arm surgery was delayed, this delay appears to be the result of the unavailability of surgery due to the ongoing COVID-19 pandemic rather than any deliberate indifference on the part of jail staff. As it is clear that Petitioner's medical issues have been treated and monitored by jail staff, as nothing Petitioner has provided indicates deliberate indifference on the part of medical staff to the issues he has brought to their attention, and as the jail has taken substantial steps towards alleviating the threat of COVID-19, Petitioner has failed to show an entitlement to habeas relief and his habeas petition must therefore be denied. *Hope*, 972 F.3d at 330-31. As Petitioner's habeas petition shall be denied, Petitioner's motion seeking a temporary restraining order shall be dismissed without prejudice as moot. In light of Petitioner's privacy interests and the general limited access restrictions placed on immigration cases, Petitioner's motion to have his medical records sealed will be granted.

### III. CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is **DENIED WITHOUT PREJUDICE**, Petitioner's motion seeking a temporary restraining order (ECF No. 6) is **DISMISSED WITHOUT PREJUDICE** as moot, and Petitioner's motion seeking to seal his medical records (ECF No. 9) is **GRANTED**. An appropriate order follows.


Dated: December 9, 2020                         *s/Susan D. Wigenton*
                                                Hon. Susan D. Wigenton,
                                                United States District Judge